[No. 15508.   Department Two.—August 9, 1895.]

ANDREW GLASSELL ET AL., RESPONDENTS, v. TEODORO VERDUGO ET AL., APPELLANTS. J. C. SCHERER ET AL., INTERVENORS, RESPONDENTS.

PARTITION—DIVISION OF WATER RIGHTS—CONSTRUCTION OF DECREE—PARTITION MAP—SPRINGS IN INCLOSED FIELD.—Where the court, in an action of partition, has adopted the report of the referee as to a division of water rights, and has adopted a partition map referred to in the report, and has provided in the decree in regard to springs which rise within a certain inclosed field delineated on the partition map as lying on both sides of a cross road, the whole of the field delineated on the map will be taken as intended by the decree, although there was in fact an inclosed field to the south of the road, and a field only partly inclosed to the north of the road, and springs arising north of the road are covered by the decree—the question being, not whether there was a substantial inclosure of the whole field, but simply what was the inclosed field referred to in the decree.

ID.—INCREASE OF WATER—OBSTRUCTION AND DIVERSION.—Where the decree in partition, in respect to the division of water, provides that certain surplus water should be turned into the channels of those springs which rise within an inclosed field, delineated on the partition map to be used by certain other parties, the fact that subsequent to the decree there is an increase of water in the field does not authorize the owner of the field to divert or obstruct the flow of water into the channels of the streams arising in the field.

ID.—DIVISION OF PERCOLATING WATER — DISPOSITION OF SPRINGS.— It is competent by a decree in partition for the court to dispose even of percolating water arising on the land allotted to one of the cotenants, and springs, if clearly included in the allotment in the decree, pass to other parties to whom they were given.

ID.—SUPPORT OF FINDINGS.—Where there is evidence to sustain the findings of the court, they will be taken as conclusive upon appeal.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. WALTER VAN DYKE, Judge.

The facts are stated in the opinion of the court.

*Houghton, Silent & Campbell,* for Appellants.

Water arising from percolation and of recent origin belongs to the owner of the land upon which the water arises. (*Houston* v. *Leach,* 53 Cal. 262; *Southern Pac. R. R. Co.* v. *Dufour,* 95 Cal. 615; *Hanson* v. *McCue,* 42 Cal. 303; 10 Am. Rep. 299.)

*N. C. Burch,* and *Albert M. Stephens,* for Respondents.

TEMPLE, J.—The plaintiffs and the intervenors claim the ownership of certain waters in Verdugo cañon in the county of Los Angeles, and complain that defendants are obstructing their use of the same and polluting the stream.

The defendant Teodoro Verdugo owns the land upon which the water rises. The other defendants claim under him. All deny obstructing the flow of any water to which plaintiffs or intervenors are entitled, or that they are polluting the stream.

Judgment was against the defendants upon all points, and they appeal from the judgment and from a refusal of a new trial.

All the parties own, or claim under those who own, in severalty, various tracts of land, parts of the rancho San Rafael. The lands included in the rancho were partitioned by a decree of the district court on the twenty-ninth day of November, A. D. 1871. By this

decree the waters on the ranch were divided and as-
signed to the several parcels of land.

The following extract from the statement found in
the record shows all that is necessary to know in regard
to said partition:

"That said referees in said partition suit made a
report to the court of their proceedings as such referees,
which was filed on the 21st day of November, 1871.
That said referees in their said report set forth and de-
scribed the various allotments made by them, and set
off in severalty to the various parties in whom interests
in said land had been found, as set forth in the report
of said referee, James H. Lander, heretofore referred to.

"That the tract referred to in the complaint as con-
taining 2,629.01 acres of the rancho San Rafael was
allotted to Teodoro Verdugo, and is the same land shown
upon the map attached to and referred to in the final
decree of partition, and is the same land upon the map
attached and referred to in the final decree of partition,
and as shown upon the plaintiff's Exhibit 'A,' herein-
after referred to.

"Paragraph numbered fifteenth of said last-named
report contains the entire report made by said referees
in partition relating to the apportionment of water on
said rancho San Rafael, and is as follows, to wit:

"'Fifteenth.   Your referees have carefully considered
the questions in regard to water, deeming them of the
most vital importance to the parties interested in the
rancho; and, in granting lands, the practicability of
irrigation has entered largely into the value of these
tracts most accessible to the sources of water supply.
And in order that as much of the lands as possible may
be supplied, your referees have endeavored to so adjust
the rights and proportions of the several parties owning
the various tracts as that, when one party is equally
able to draw his supply from either one or another of
the various sources, and the same can be used by him
to greater advantage than by the other parties, they
have considered it best and most equitable to confine

such party to that stream which cannot be used by the other parties so advantageously as by him, and to restrict his enjoyment of the water in the other courses.

"'Excluding those springs which can be naturally made available for irrigating the tract upon which they rise, the localities from which water may be obtained, without the employment of artificial means to raise it to the surface of the earth, may be set down as five in number.

"'1st. The first is the stream that rises in the Verdugo cañon upon the tract of land assigned to Teodoro and Catalina Verdugo, as tenants in common, near the foot of a spur running down from the Chuchilla of Francisco Maria, east of and near to both the road that runs through the cañon and the house or "jacal," in which at present reside a family of Mexicans bearing the name of "Paco."

"'2d. The second are the streams that rise west of the said road within the inclosure of the said Teodoro, and east of his house.

"'These constitute and form by far the largest body of flowing water upon the ranchos, excepting the Los Angeles river, which forms one of the boundaries.

"'3d. The third is a stream that rises near the south boundary of the 1,702 64-100 acre tract assigned to P. Beaudry, near the Arroyo Seco, and within a short distance from the ruins of the old adobe house wherein one Joaquin Chabulla formerly resided.

"'This stream flows naturally in a southerly direction.

"'4th. The fourth is the Arroyo Seco. The supply from this, though at present is only an undefined interest, may in the future be so developed and established as to be worthy of their notice.

"'The probability of obtaining water from the Arroyo Seco did not affect the grades as established by us of those lands lying along it.

"'5th. The fifth is the Los Angeles river, from which, by means of canals and ditches, it is the opinion of

your referees that water can be conducted upon a large body of the lands lying along its east bank.

"'Your referees therefore recommend, as the most economical, as well as just and equitable, disposition of the waters of these five sources, that the following be adopted by the court:

"'That the said Teodoro Verdugo and Catalina Verdugo, so far as her interest is in common with the said Teodoro, be and decreed to have, so far as their necessities require, the exclusive use and benefit of the first above-mentioned stream of water; the surplus thereof to be turned into, and to be permitted to flow into, the second above-mentioned stream or streams.

"'That the waters forming the second, together with the surplus from the first, as above provided, belong to the several parties, Rafaela Verdugo de Sepulveda, Julio Verdugo, O. W. Childs, C. E. Thom, Maria Antonio Verdugo de Chabulla, Crisostomo Verdugo, Fernando Verdugo, Pedro Verdugo, Jose Maria Verdugo, Quirino Verdugo, Rafael Verdugo, Guillermo Verdugo, Vittorio Verdugo, Benjamin Dreyfus, Catalina Verdugo, Maria Sepulveda de Sanchez, Andrew Glassell, A. B. Chapman, and P. Beaudry, and that these several parties be decreed to be entitled to use and enjoy said streams referred to as the second, and the surplus water from the first in the following proportions, which proportions have been calculated by your referees upon the basis of the number of acres of irrigable land assigned to them in this partition, to wit':

" (The report here proceeds with the allotment made by the referees of the waters from the Verdugo cañon to the various parties other than Teodoro Verdugo and Catalina Verdugo, to whom lands were allotted in severalty in said rancho San Rafael, as stated in the complaint of plaintiffs in this suit.)

" That there was attached to said report of said referees a map showing the lands and waters parceled between the parties in said action, and made a part of the referees' report; which map was introduced in evidence

by plaintiff, and which said map is hereto attached as plaintiff's exhibit 'A.'

"That the final decree in said partition suit was made and filed by said district court on the 29th day of November, 1871, and set forth the allotment of the lands of the said rancho San Rafael in severalty to the parties to whom the same were allotted in and by the report of said referees in said partition, and allots to the said Teodoro and Catalina Verdugo the said tract of 2,629.01 acres, and which tract is designated by the said figures inscribed thereon on the map referred to in the decree of final partition. That said decree of partition contains the following clause with reference to the water rising upon the tract set off and allotted as aforesaid to said Teodoro and Catalina Verdugo, shown upon said partition map:

"'It is further ordered, adjudged, and decreed that the defendants, Teodoro Verdugo and Maria Catalina Verdugo, so far as the interest of the said Catalina is in common with the said Teodoro, their heirs and assigns, do henceforth forever have, hold, and enjoy as an appurtenance connected with and attached to the said tract of two thousand six hundred and twenty-nine and 1-100 acres, and so far as the same is necessary to supply their necessities for water, for domestic and irrigating purposes and the demands of their stock and cattle, the sole and exclusive right to the springs of water that rise near the foot of a spur running from the Cuchilla Francisco Maria, east of the road that passes up the cañon, and near to the house wherein now a family of Mexicans of the name of Paco reside. Provided, that all the surplus water of said springs, over and above that reasonably required by the said Teodoro and Catalina, their heirs and assigns, shall be permitted by them to flow, or be turned into the channel of those springs which rise within the inclosed field of the said Teodoro and Catalina, west of the said road, and to be used by the other parties as hereinafter next provided.

"'And it is further ordered, adjudged, and decreed

that the waters rising within the said inclosed field of the said Teodoro and Catalina Verdugo, west of the said road and the west side of the Verdugo cañou, together with the surplus from the spring or springs of Catalina and Teodoro as aforesaid, belong to, and shall be held and enjoyed as an appurtenance attached to and running with their respective tracts, irrigable therefrom, by the several parties hereinafter named, their heirs and assigns forever, in the following proportions, to wit.'

"Then follows in said decree the allotment of said waters to the persons and in the proportions as described in the complaint in this suit.

"That said final decree has never been modified or reversed, and is the final decree in the said partition suit.

"Said map so filed and referred to by said referees in partition was referred to by the court in its final decree, and confirmed and made a part of said decree, and reference made thereto for descriptions of land and water."

The court in such an action is not required to adopt the report of the referees as a whole or reject it, but may modify and change the division recommended. So far as concerns the division of the water in question here, however, it is evident, notwithstanding the use of different descriptive terms, that the court did adopt the division recommended, and endeavored to effectuate it in the findings and decree.

Since the partition defendant Teodoro Verdugo has acquired from Catalina her interest in the tract of land awarded to the two in common. The water assigned to the use of that tract in the decree is the water first described in the report of the referees. Concerning it there is no dispute. It ran southerly along east of the road in Verdugo cañon. Verdugo lived on some high mesa land to the west of the cañon. He had an in-closed field to the south of a road called the cross-road, leading from the cañon to his house, and a field partly inclosed to the north of this road. Plaintiffs contend

that both fields make one field, and constituted the inclosed field mentioned in the decree of partition, while the defendants claim that the lower field, which they call the parallelogram field, was the only inclosed field then on the land.

The water west of the cañon road, which by the decree is given to the plaintiffs and intervenors, flows in a gulch, which opens into the cañon a mile or more below Verdugo's house. This gulch extends into Verdugo's mesa land from the south, passing along the lower field, where it branches. In the easterly branch is the largest body of water. Both branches extend north of the cross-road into the upper or northerly field. They are so delineated on the partition map.

The partition map also shows the fields to the north of the cross-road and that to the south as one field or inclosure, and this was the finding of the court. I think this must be held conclusive on this appeal.

The question is not whether there was a substantial inclosure such as would constitute adverse possession, but simply what is the inclosed field referred to in the decree.

The springs or water referred to were west of said road and west of the cañon, and the decree—construing it, in this respect, as a confirmation of the report—assumes to dispose of all the waters on the ranch, "excluding those springs which can be naturally made available for irrigating the tract upon which they rise." It was certainly intended to give to plaintiffs the water running in these gulches.

But the defendants contend that, even if the court finds that the inclosure mentioned in the decree includes the field northeast of Verdugo's house, still the plaintiffs cannot recover. They claim that the water in controversy was not there at the time of the partition, but has appeared since.

It seems that there are now two swamps or marshes in this northerly field. They are divided from each other by a narrow ridge. The westerly one counsel call

cienaga A, and the easterly cienaga L.  A contains almost fifteen acres; the other is larger.

These cienagas, it is said, are fed by percolating water, and made their first appearance there not earlier than 1884.  They are now found just north of the termination of the two branches of the streams as they are marked on the partition map.  Dams have been erected just above the heads of the two streams and below the swamps or cienagas, and the water diverted for use on defendants' land.  But for this obstruction and diversion the water from the cienagas would flow into the channels of the streams as designated on the partition map.

From the testimony of the witnesses it seems pretty certain that there is more water in the upper field than there was at the time of the partition.  A mere increase, however, would not justify the defendants in appropriating the excess.  The evidence does not show in what mode the water rises in those cienagas, whether by percolation over the whole surface or in one place, and it is claimed that but for the dams there would be no marsh there.

To sustain the contention of the defendants would be to establish a very dangerous doctrine.  The memory of witnesses is little to be trusted on such subjects, and the owner of the land from which the water rises has a great advantage in that matter.

Such increase is a very unusual occurrence, and the fact should be established very satisfactorily before the court would be justified in determining that there had been such increase.

The cienagas are probably fed from the same source as the streams which were allotted to the plaintiffs.  In fact, as defendants' counsel says, the decree designates the source of the water given plaintiff as springs.

There was evidence, aside from the map, that the water flowed from the upper field.  Eaton, one of the referees who made the partition, is very positive about it, and thinks there was a swamp at the head of the easterly branch.

Thom says there was some swampy ground in the north field. Andrew Glassell testifies to the existence of swamps there two or three years after the partition, and Snee that they were there in 1877.

It must be remembered that this is not a controversy between an appropriator and a riparian owner. By the decree it was competent for the court to dispose even of percolating water. Several witnesses testify that the lands of the upper field, or portions of it, were springy, moist, spongy, or boggy prior to 1884. Considering the difficulty of proof in such a case, and that such occurrences as that claimed for defendants are quite unusual, I cannot think the conclusion reached by the trial court unreasonable.

The court found the facts against the defendants, and there was certainly evidence to sustain the decision.

Notwithstanding the implication, in the report of the referees, that the description of the various sources of water excluded such springs as could be made available to irrigate the lands upon which they rise, such springs, if clearly included in the allotment in the decree, passed to the parties to whom they were given.

The answer admits obstructing some of the waters claimed by the plaintiffs and intervenors, and the fact was also proven. If some defendants have not polluted and do not propose to pollute the water, the fact that in this respect the injunction does not discriminate between them and the Chinamen who are doing so will do no harm.

The order and judgment are affirmed.

HARRISON, J., and McFARLAND, J., concurred.

Hearing in Bank denied.